FOUTE & VEAL, plaintiffs in error, *vs.* MASSEY & LANSDELL, defendants in error.

Though it be impossible for this Court to trace the process by which the jury made their verdict, yet if, under the testimony such verdict could be found, and the trial was full and fair, and without misdirection by the Judge, and the testimony was conflicting, this Court will not overrule the Judge below for refusing a new trial.

Assumpsit. Motion for new trial. Decided by Judge Warner. Fulton Superior Court. April Term, 1867.

This action was founded upon a written contract of the following substance, made in Atlanta on the 11th of September, 1862. Foute & Veal, of the Eureka Copper Works, bound themselves to deliver to Massey & Lansdell, druggists of Atlanta, Georgia, in railroad depot at Cleveland, Tennessee, by each 1st and 15th day of each month from

that date to January, 1863, 3,000 lbs. of copperas, and should Massey & Lansdell give them notice, they would deliver 2,000 lbs. additional on either of said days, if they had it on hand.    For this Massey & Lansdell bound themselves to pay Foute & Veal $1.00 per lb., for every pound so delivered, on presentation of the railroad receipt of shipment, and took a monopoly of the business by binding them not to sell any copperas during the time to others in Georgia, except by retail near the works.

Several installments of the copperas came, were received and paid for.    Afterwards a lot, to-wit: 10,801 lbs., came to Atlanta.    Massey & Lansdell did not pay for it, and action was brought.

They defended on the grounds that Foute & Veal had sold to others in Georgia, in violation of the contract, that the copperas was not good, and did not come up to the representations, and also plead the scaling ordinance.    The following is the substance of the lengthy brief of evidence.    It appeared that upon the arrival of said lot of copperas at Atlanta, Massey & Lansdell would not take it from the depot, that Joseph T. Porter, then a commission merchant, of his own accord, took charge of it, and sold a little of it, and the balance was burnt up in his store.    Porter and others testified that the said copperas was worthless, and Porter said that Foute came to Atlanta, saw the same in his store, and was told it was subject to his order, but refused to take it or control it.    The defendants also showed that when the contract was made Foute had with him a sample, and proposed to furnish such copperas as that, and that the said copperas did not come up to the same, and was worthless.    To this evidence of sale by sample, plaintiffs' attorneys objected, but their objection was overruled.

Defendants also showed the relative value of Confederate money (which was the currency in which said contract was to be discharged) and gold, and that good copperas at the time of the trial was worth from four to six cents per pound, according to quality and quantity sold.    This evidence as to

the value of copperas at that time was admitted over the objections of plaintiffs' attorneys.

On the other hand the plaintiffs testified that they were practical chemists, and that the copperas sent was good, that they were selling just such at and near the mines at 75 cts., to $1.00 per lb., at the time in greenbacks, because of the scarcity of the article, and showed by Mr. Lowry, of Atlanta, that he had presented the bill for that copperas to Massey soon after the shipment, and Massey said it was right, but he could not pay the bill because of Lansdell's absence.

Neither of the plaintiffs were present at the trial.

The verdict was for plaintiffs for $162.00, with interest from the —— day of December, 1862, and costs.

The plaintiffs moved for a new trial upon the following grounds:

1st, 2d, 3d and 7th, Because the verdict is contrary to evidence, etc.

4th and 5th, Because the Court erred in charging the jury that they might consider the present value of copperas.

6th, Because plaintiffs were surprised at the testimony of Lansdell and Porter, touching Foute's seeing the copperas at Porter's store, being told it was worthless, etc.

8th, Because the Court admitted evidence of a sale by sample.

In support of the sixth ground, they produced an affidavit of Foute, denying the statements made by Lansdell & Porter on that subject.    The Court refused a new trial, and that is assigned as error.

R. ARNOLD, E. N. BROYLES, for plaintiffs in error.

COLLIER & HOYT, (by JOHN D. POPE,) for defendants in error.

HARRIS, J.

The suit below was for the recovery of the value of ten thousand pounds of copperas, forwarded during the late war, under contract, to defendants; the copperas was to be delivered at Cleveland, Tennessee.    From that point it was for-

Foute & Veal *vs.* Massey & Lansdell.

warded to Atlanta. To meet the demand of plaintiffs, defendants set up in their pleas, that they contracted with one of plaintiffs for the copperas according to a sample exhibited at the time; that the boxes forwarded to Atlanta did not contain copperas of the kind exhibited by sample, or substantially approaching it in quality, but that it was greatly inferior in quality, and in value not worth half as much as copperas of the quality of the sample would have been. They further plead that when the boxes containing the copperas arrived at Atlanta, after inspecting them, they refused to receive them, and that within two months, the copperas having in the interval been taken in charge and stored by a merchant of Atlanta, and for and on account of plaintiffs.

The testimony disclosed the fact that one of the plaintiffs, within two months after the copperas had been forwarded from Cleveland, visited Atlanta and found the copperas stored with a merchant of Atlanta, who was a volunteer in the office assumed. The plaintiffs did no act to change the storage, relying probably on what they deemed a breach of contract by defendants. In a short time after this visit, the store to which the copperas had been taken, was burned and the copperas thereby rendered valueless. Under this statement of facts substantially, with evidence as to the value of the copperas, the case was submitted to the jury. No error is alleged as to any of the rulings of the presiding Judge— none as to his instructions to the jury after the testimony had been fully heard.

We have endeavored to trace the process by which the jury arrived at the amount of damages specified in their verdict, but confess that we can find no thread which will enable us to traverse this labyrinth. It is to be observed, however, that in the testimony will be found opinions of witnesses as to the very low value of the copperas, which if credited, as they must have been, (for on no other hypothesis can the verdict be sustained,) reduces the claim of plaintiffs very nearly to the amount found by the verdict. *Lex non curat de minimis* is an old law maxim which could under no circumstances

be more appropriately applied than in this case, and refusing, upon the principle contained in it, a new trial.

The trial appears to have been fair and very full, and even tedious in its length and details. No misdirection of the Judge complained of, an evident and irreconcilable conflict of testimony, and, besides, the Judge who heard the cause below being entirely satisfied with the verdict, and having in consequence thereof refused the plaintiffs a new trial—we are all of the opinion that in just such a case as this appears from the record to be, further litigation should be arrested ; we therefore affirm the judgment below.